# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **DAVID JERNIGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 1:25-cv-00001** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **LARRY E. CONNOR, et al.,** | ) | **MAGISTRATE JUDGE** |
| | ) | **HOLMES** |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the Court is Defendants Sulaman Hemani and Tax Planning Consultants, LLC's ("TPC") Motion to Dismiss. (Doc. No. 29). Plaintiff David Jernigan filed a response in opposition (Doc. No. 42). For the reasons discussed below, the motion will be **GRANTED** in part and **DENIED** in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendants Sulaman Hemani and TPC were introduced to Plaintiff in 2016 as a tax and accounting expert and certified public accountant to assist Plaintiff with filing his taxes. (Doc. No. 14 ¶¶ 34, 39). Plaintiff alleges Defendants marketed a fraudulent and abusive-tax trust scheme as a legal and legitimate tax shelter at an in-person marketing conference in 2016. (*Id.* ¶ 34). The scheme involved co-Defendants Larry Conner and Eden Green Trust creating a trust that became the sole or majority owner of their victims' businesses. (*Id.* ¶ 73). The trust would then "donate" some or all of the business income to a family charitable foundation without paying any taxes, and victims would then use the donated funds for their personal use and report the funds spent as expenses of the family foundation. (*Id.* ¶¶ 74-75). The victims were established as trustees and beneficiaries of the family foundation, and the family foundations paid little to no state and federal taxes under the scheme. (*Id.* ¶ 77). Plaintiff alleges that the scheme resulted in 90% to 100% of the

1

victims' business income being diverted to the victims' personal use through the family foundation without the payment of any taxes in the process. (*Id.* ¶ 78).

Plaintiff alleges that Defendants made false statements that the scheme was legal and used by Bill Gates and the Zuckerburg family and that only 92 families in the United States were privy to the scheme. (*Id.* ¶ 36). Plaintiff relied on Defendants' statements and paid approximately $50,000 to Defendants Conner and Eden in 2016. (*Id.* ¶ 37). Between 2016 and 2023, Defendants would "pitch" the tax shelter scheme to individuals and entities that had not yet purchased Defendants' products and services, as well as maintain relationships with individuals and entities that had already purchased the Defendants' products and services. (*Id.* ¶ 40). Plaintiff alleges that Defendants Conner, Eden, Hemani, and TPC had a pre-existing relationship of referring potential victims to each other to control and manage their victims of fraud and deceit and keep them away from qualified legal and tax experts who could alert the victims to the illegality of the fraudulent and abusive-tax trust scheme. (*Id.* ¶ 46). Plaintiff brought suit against Defendants for fraud, violation of the Racketeering and Corrupt Organizations Act ("RICO"), RICO conspiracy, negligent misrepresentation, and violation of the Tennessee Consumer Protection Act ("TCPA").

On March 27, 2025, Defendants filed the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 29).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial

plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

### III.     ANALYSIS

**A. Statute of Limitations**

Defendants Hemani and TPC argue that all of Plaintiff's claims are barred by the statute of limitations because they were not involved in the scheme after 2017.

A Rule 12(b)(6) motion only considers the allegations in the Complaint and generally will not be granted based on a limitations defense unless the Complaint shows that a claim is time-barred. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Moreover, "a motion to dismiss under Rule 12(b)(6) is generally not the appropriate vehicle to dismiss a claim based on an affirmative defense" because "as with all affirmative defenses, it is the burden of the defendant to prove the elements of the defense." *Mixon v. Trott L., P.C.*, No. 19-1366, 2019 WL 4943761, at *2 (6th Cir. 2019). A plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, an affirmative defense can be the basis for dismissal under Rule 12(b)(6) if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted).

Accordingly, the Court must review the allegations in the complaint to determine if the statute of limitations affirmative defense clearly applies.

Here, Plaintiff alleges that he learned that Defendants' scheme was fraudulent on September 22, 2023. (Doc. No. 14 ¶ 59). Construing the allegations in the First Amended Complaint as true as it must at this stage, the Court finds that the allegations do not clearly show that Plaintiff's claims for fraud (Count I), RICO (Count II), RICO conspiracy (Count III), and negligent misrepresentation (Count IV) are time-barred.[1] Accordingly, as the allegations in the First Amended Complaint do not demonstrate that the statute of limitations affirmative defense clearly applies, dismissal of these claims is denied.

With respect to Defendants' argument that Plaintiff's Tennessee Consumer Protection Act ("TCPA") claim is time-barred, the TCPA provides that "any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110; *see also Daycab Co. v. Prairie Tech., LLC*, 67 F.4th 837, 853, 853 (6th Cir. 2023). Plaintiff discovered Defendants' alleged fraudulent acts on September 22, 2023. Plaintiff did not file this lawsuit until January 7, 2025. Accordingly, it is clear from the face of the Complaint that Plaintiff learned of Defendants' alleged TCPA violations more than one year before bringing this action. Plaintiff's TCPA claim is clearly barred by the applicable statute of limitations and should be dismissed.

---

[1]    *As You Sow v. AIG Fin. Advisors, Inc.*, 584 F. Supp. 2d 1034, 1046 (M.D. Tenn. 2008) (favorably citing *Prism Partners. L.P. v. Figlio*, 1997 WL 691528, 1997 which held that "[i]n Tennessee, the statute of limitations for fraud is three years."); *Slight v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 769 F. Supp. 3d 748, 753 (N.D. Ohio 2025) (cleaned up) ("The statute of limitations for civil RICO claims is four years. The limitations period begins to run when a plaintiff discovers the injury underlying the claim."); *Withrow v. First Tennessee Bank Nat. Ass'n*, No. 3:04-CV-546, 2006 WL 1288574, at *1 (E.D. Tenn. May 9, 2006) ("Under Tennessee law, the statute of limitations period for an action for negligent misrepresentation is three years. *See* T.C.A. § 28-3-105; *Medical Education Assistance Corporation v. Metha,* 19 S.W.3d 803, 817 (Tenn.Ct.App.1999).").

4

**B. Failure to State A Claim**

Defendants also argue that Plaintiff's claims should be dismissed because Plaintiff failed to satisfy the heighted pleading standard applicable to fraud claims, failed to plead facts to show the existence of an enterprise, a pattern of racketeering activity, or a conspiracy as required for his RICO and RICO conspiracy claims, and failed to plead facts to establish a claim for negligent misrepresentation.

1.  Fraud (Count I)

"Claims that sound in fraud must meet Rule 9(b)'s heightened pleading standard. This Rule requires a plaintiff to 'state with particularity the circumstances constituting fraud.' Generally, Rule 9(b) requires a plaintiff '(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent.' But 'malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Hill v. Ardent Health Servs.*, 806 F. Supp. 3d 711, 715 (M.D. Tenn. 2025) (cleaned up).

Here, Plaintiff alleges in the First Amended Complaint that Defendants "directly and indirectly made numerous knowingly false affirmative misrepresentations and intentional omissions of material fact" to Plaintiff, including "[m]isstating the tax treatment of the Ownership Trust(s) and Family Foundation(s)," "[c]laiming that the fraudulent and abusive-tax trust scheme was legal and valid under the United States Internal Revenue Code," "[s]tating to Plaintiff and others that the fraudulent and abusive-tax trust scheme was used by high profile wealthy individuals and families such as Bill Gates and the Zuckerberg Family," "[k]nowingly filing false and fraudulent tax returns on behalf of the Plaintiff and others" and "[s]tating that the fraudulent and abusive-tax trust scheme complied with the Internal Revenue Code when they knew it did

not." (Doc. No. 14 ¶ 84). Plaintiff also alleges that these statement were false and that Defendants knew they were false at the time they were made. (*Id.* ¶¶ 86 - 90). Plaintiff alleges that between 2016 and 2020, he paid $33,275.00 to Defendants. (*Id.* ¶ 92). Plaintiff further alleges that Defendants prepared marketing materials provided to Plaintiff "to pitch the scheme to Plaintiff and others as a legitimate tax avoidance structure even though the Defendants knew the statements to be false" and that Defendants did so "knowing the intent of the materials was to induce the Plaintiff and others to purchase and maintain the fraudulent and abusive-tax trust scheme." (*Id.* ¶¶ 98-99).

Construing the allegations in the First Amended Complaint in Plaintiff's favor, as the Court must at this stage, the Court finds that the allegations in Count I are sufficient to meet the heightened pleading standard of Rule 9(b).

2. <u>RICO (Count II)</u>

"The civil RICO statute, 18 U.S.C. § 1964(c), creates a cause of action for 'any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962.' And 'by reason of' means the injury must be proximately caused by the RICO violation.'" *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 453 (6th Cir. 2019) (cleaned up). Moreover, "[t]o establish a violation of § 1962(c), a plaintiff must plead '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'… A pattern is defined as a minimum of two acts of racketeering activity within ten years of each other, although two acts may not be sufficient" and "[t]o establish a pattern, a plaintiff 'must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.' This is known as the relationship plus continuity test. These components are analyzed separately, although 'their proof will often overlap.'" *Id.* at 453-454 (cleaned up) (emphasis in original).

Plaintiff alleges that Defendants "engaged in the creation of multiple entities and engaged the services of multiple individuals to perpetrate a plan to defraud Plaintiff and others by convincing their victims that the fraudulent and abusive-tax trust scheme was a legitimate tax shelter that would provide actual tax benefits when Defendants had actual knowledge that their abusive-tax trust scheme was illegal and would expose their victims to criminal liability" and that Defendants "would host a tax strategy seminar multiple times a year between 2016 to 2023 where Defendant Conner and Defendant Eden were always present and accompanied at times by Defendant Hemani and Defendant TPC who would make public marketing presentations of the abusive-tax trust scheme, or another certified public accountant and/or certified public accounting firm would attend and give the public marketing presentations. (Doc. No. 14 ¶¶ 112-113). Further, Plaintiff alleges that "Defendants used the mail and/or wires to develop, promote, sell, and implement the fraudulent and abusive-tax trust scheme which impacted interstate commerce in Colorado, Texas and Kansas" and that Plaintiff "exchanged dozens of emails" with Defendants. (*Id.* ¶¶ 116, 125). Plaintiff also alleges that "[b]y acting in concert together to achieve the same goals (financial gain), the association of the Defendants constitutes a racketeering enterprise." (*Id.* ¶ 128). Here, the allegations in the First Amended Complaint are sufficient to state a claim upon which relief may be granted for Count II.

3. RICO Conspiracy (Count III)

"To state a claim for violation of § 1962(d), a 'plaintiff must successfully allege all the elements of a RICO violation, as well as alleging the existence of an illicit agreement to violate the substantive RICO provision.'" *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 459 (6th Cir. 2019) (cleaned up).

Here, Plaintiff alleges that Defendants "created a common design between themselves to accomplish by concerted actions multiple frauds against the Plaintiff and others and committed overt acts in furtherance of this conspiracy to defraud, and Plaintiff and other victims have been directly injured as a result," that Defendants "created a common design between themselves to accomplish by concerted actions multiple frauds against the Plaintiff and others and committed overt acts in furtherance of this conspiracy to defraud, and Plaintiff and other victims have been directly injured as a result," and that the "nature of Defendants' unlawful conduct give rise to an inference that Defendants not only agreed to the objective of conspiring to violate, but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity intended to financially benefit Defendants and their co-conspirators." (Doc. No. 14 ¶¶ 181-183). Taking these allegations as true, as the Court must at this stage, Plaintiff has sufficiently pled his RICO conspiracy claim.

4. Negligent Misrepresentation (Count IV)

"A plausible claim for negligent misrepresentation requires sufficient facts showing that, among other elements, a defendant has provided (1) false information, (2) for the guidance of others, (3) in a business transaction. *Black's Law Dictionary* defines a business transaction as 'an action that affects the actor's financial or economic interests, including the making of a contract.'" *City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1339 (E.D. Tenn. 2016) (cleaned up).

Here, Plaintiff alleges that "[d]uring their dealings with Plaintiff related to the establishment of trust(s), foundation(s), and preparation & filing of personal, trust(s), foundation(s), and business tax returns" Defendants "negligently made affirmative representations regarding the validity of the abusive and fraudulent tax scheme, that were incorrect, improper, false, negligently made misleading omissions of material fact and negligently gave improper and

inaccurate recommendations, advice, instructions, and opinions to Plaintiff," that "Plaintiff relied to his detriment on the representations, recommendations, advice, and instructions of the Defendants in that he paid Defendants for legal, tax, and accounting services," and that "[a]s a result of Defendants' negligent and grossly negligent representations, recommendations, advice, instructions, and omissions, Plaintiff has and will continue to incur substantial costs in hiring new tax and legal advisors to remedy the harm caused by Defendants and may even be criminal[ly] prosecuted for Plaintiff's participation in the Defendants' abusive and fraudulent tax scheme." (Doc. No. 14 ¶¶ 212, 219, 220). Plaintiff's allegations are sufficient to state a claim for negligent misrepresentation.

Accordingly, the Court finds that the allegations in the First Amended Complaint are sufficient to state a claim upon which relief may be granted for Counts I, II, III, and IV. (*See* Doc 14 ¶¶ 83-106). The Court denies Defendants' motion as to Counts I, II, III, and IV.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. No. 29) will be **GRANTED** in part and **DENIED** in part.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE